You may want to identify yourself. This is picked up on the tape. My suggestion is that the only issue that's non-counted is the removal issue, the threshold issue. My suggestion is that that issue be argued, period. And then we move to Barrage and Allen on the CMO6 issue. So I don't have to get up and do half of my argument in Barrage, wait for the other side to get up in Allen, and then do the other half of my argument in Allen. Well, I guess that's up to you. I don't know whether counsel have agreed to that or not. As long as it doesn't affect the time they're allotted, they're always going to get an agreement. Yeah. Yeah, that is correct, Your Honor. If the court allows that, that's fine. We have no objection, as long as it doesn't cost us any time. Sure, that's fine. And as a result, Your Honor, part of the agreement is that we have an additional 10 minutes allotted to lay the appeal. It's the first appeal Barrage. We've done half of it, a lot of time. My name is David Cairn from the plaintiffs' appeal. Anderson. All right, so you're going to take – does that mean this appeal is going to have 10 minutes aside? Yes, Your Honor. All right, and then you're going to add that 10 minutes to Allen, in effect. It may not be consumed, and you don't need to feel an obligation to – Yes, Your Honor. But that's – assuming it's fine with my colleagues, that's okay. Yes, it is. All right. We do appreciate that voices expand to fill the time available, so just remember what Judge Reimer said. Okay, then, Mr. Miller. Thank you, Your Honor. Good morning. May it please the Court, I'm Michael Miller, and I'm here on behalf of Fannie Barrage. And as we've just discussed, I'll take the remand issue. Having 10 minutes for it, I won't use the whole 10, honestly. I would like to reserve about five minutes in the unlikely event I have five minutes of rebuttal. We have received a letter from the Court wanting us to address the new case from Mississippi, Williams v. Bennett. And I'd like to do that, but I'd like to first start out with a couple of preliminary points and then lead into that if I could. In Mississippi, certainly in the Fifth Circuit, and I know in the Ninth Circuit, the presumption goes to the non-moving party in the removal action. And I do not believe respectfully that the MDL court below gave us that presumption. May I ask you sort of a pointed question on the pleadings here? These, in the complaint here, it is alleged that Bayer or the defense, whatever, that Bayer concealed information from specifically from retailers and pharmacists. And that poses an inconsistency with the allegations that are elsewhere in the complaint, that the retailer and pharmacist resident defendants had or should have had knowledge from published information that was out there. So that's what I would like to hear you on, is why that shouldn't make a difference. I understand the court's concern. I'd be happy to address it directly. In Mississippi, we have notice pleading, and we have pleading in the alternative. You can plead that my dog didn't bite you, and I don't have a dog anyway. That is totally acceptable. It's not inconsistent here in any event. Paragraphs 44 through 58 of the amended complaint deal very clearly with the ways that the pharmacist knew or should have known about this. There was no hiding the problem by Bayer to the extent that the pharmacist should not have known. There was, in fact, an article as we pled in the complaint in the American Journal of Medicine that expressly recommended against the use of PPA years before Mrs. Barrage had her stroke. That's clearly an inference that the pharmacist needs to know about the drugs he's selling and know about these problems that are published in such a prestigious journal. There were, for 20 years, 20 years, reports in the medical literature and the peer-reviewed medical literature that PPA caused a stroke, the kind of literature that any responsible pharmacist would read. We pled that. We also pled that in 1985, again, the Journal of Medicine had recommended against the use of PPA. We pled that in 1985, again, the FDA, the Food and Drug Administration, of course, had omitted PPA from the monograph for classifying over-the-counter drugs as nasal decongestants. The FDA since 1985 had said there are safer drugs. The FDA is something that a pharmacist should be aware of. He or she has a responsibility to know about that and to sell drugs that are appropriately safe based upon what the FDA has told them. There had been, before Mrs. Barrage was hurt, 29 adverse drug event reports that were publicly available. They were not concealed by Bayer. They were publicly available, and that's well pled in our complaint, and that these are the kinds of things that a pharmacist should know about. There were congressional hearings in 1990. That is pled in our complaint about PPA and its causing hemorrhagic stroke, the same kind of stroke that Mrs. Barrage had. So that was not concealed by Bayer, and that was well pled in our complaint. There was meetings again in 91 by the FDA to address the issue of the efficacy and safety of PPA. Then again, we pled from 1991 to 2000, the FDA received another 22 adverse drug event reports associated with stroke and PPA, just the kind of stroke that Mrs. Barrage had. So we pled enormous. Remember, Mississippi is a notice-pleading state. All we have to do is give them fair notice of a complaint. We didn't need to give them all this, but we did. And finally, we pled that there was significant underreporting of adverse event reports. The 22 and 29 earlier adds up to 51. But that, what we pled was, and it's common knowledge in the FDA, is that if there's 51 reports, it could be as many as 100 times that out in the general community. And pharmacists know that. So pharmacists know that there is literally this epidemic out there. And they know that there is a safe and effective alternative. Pseudohepedrine, we pled in our complaint, was a drug that could easily be replaced and, in fact, was replaced eventually in November of 2000 for PPA. But that knowledge was available to pharmacists, and those products were available to pharmacists before Mrs. Barrage had her stroke. Finally, we pled that, although not needed, there was an epidemiological study that had been in the works and well-published about the Yale study that confirmed a substantial increase in the risk of strokes, and that that knowledge was available to pharmacists who were doing their duty to stay up with the literature in their profession. So all that was pled in our amended complaint. As I read the defendants' brief, I'm impressed with their argument. It seems to boil down to if we say the defendants in our complaint, then there is an assumption it must be only Bayer, and we didn't specifically plead against the pharmacists' defendants. Understandably, they did not cite any case in Mississippi or in the Ninth Circuit which says that is deficient pleading because it is not. When we say the defendants failed to do the following, and we have specifically named who defendants we are discussing, that's more than enough under Mississippi law, or I believe any law, to give them notice, as is required under Mississippi, that they are on notice that that is the complaint. I also noticed in their response that, well, people don't really follow up on these complaints against the pharmacists, and that's factually inaccurate. I personally tried a case in PPA against the pharmacists at trial. We don't drop them out later. And the case law that we cited in our brief said even arguendo, if there are firms out there that do that, which we don't, we've got that proved. But if there are, that is not reason to drop, to pull the case into federal court. Well, now, certain of these nondiverse defendants have not appeared. Am I right? I believe you're right, Your Honor, that they have not appeared. I think the case, yes, Your Honor. And for all we know, they have not been served. At this point, I don't believe they have because the case was pulled in. I don't think they have. The case was pulled into federal court, I think, before we could get service on any of them, and away we went. So I don't think we did serve them, you know, is the answer. We're trying to get back to state court so we can serve them. And I take it that what is your position, then, that once it was removed, you couldn't serve them? I don't have a complete answer or 100 percent of a target, but I don't think so. My gut tells me I could not, but I'm not sure, so I don't want to make a... Now, I take it that there is nothing in this record, any place, that suggests that you have any sort of a deal with any of these non-diverse plaintiffs? There is no record of that because there is no deal. I mean, there's no deal to have them in for... Well, now, normally, under the federal rules of procedure, the district court would dismiss a case against a party where service has not been made within a certain period of time. I understand that, Your Honor, but our position would be the case should never have been in the federal court. The minute the case was pulled into the federal court... Well, you're okay if your position is that you're saying to us that the case should be remanded because there is a non-diverse party, and you're telling us you've stated a claim, and yet you've never served that party to make them here, and yet, for the purpose of remand, you're saying they're a party. But under the federal rules, the court would be dismissing this case for failure to serve. That's the position we're in, is it not? It is, Your Honor. If the removal was improper, this court doesn't have jurisdiction. Therefore, this case belongs in the state court where there is no requirement in Mississippi to have them serve within a certain period of time. I'm a representative of this court. The minute we get back, we're going to serve them, and they're going to be in this case. They were sued. All right. And we were going to serve them, but away we went to CF. I think I have three seconds left, so I'd better sit down. I thank you so much for your time. Thank you, Mr. Miller. Mr. Tottenham. Good morning, Your Honors. Good morning. Please accord. I'm Terry Tottenham. I'm back for the second day. The Burrage case did not involve a pharmacist or a pharmacy. The Burrage case involved Fred's Dollar Store. No allegation that a pharmacist or they even had a pharmacy. The Latiker case involved a grocery store. Now, our position is that it is beyond unreasonable to believe that a grocery store clerk or a convenience store clerk is going to be reading medical literature or know anything about the Yale study. And when ---- Mr. Tottenham, one of the things that's kind of at least curious to me is that in some cases, the defense actually did get an affidavit from the resident defendants. In this case, it didn't. I mean, it would have been ---- it would be fairly simple to have someone say, you know, I'm a grocery store clerk in a small town and I never see the New York Times or read the Yale Medical Journal or any of that stuff. Well, first of all, there were some that were affidavits were filed where we were able to do so. The fact of the matter is, and this is not in the record, a lot of these cases were filed, hundreds of cases were filed, in a flurry to overcome the Mississippi Tort Reform Act. And we had so many small mom-and-pop operations that it was virtually impossible to go out and get affidavits from everybody. But the point is, the burden is not on us. It is something that may be considered by the trial court, but it is certainly not necessary. Well, the burden is on you to show removal jurisdiction. And if the complaint arguably charges the resident defendants with knowledge of publicly available information, how, in your view, have you met the burden? Let's go back to Williams for a moment. Williams clearly establishes that there is no claim against an innocent seller. A seller who sells a prepackaged product, and that's all that is alleged against that seller, that is an innocent seller. Mississippi recognizes that for a diversity purpose or any other purpose, that seller cannot be held liable. So on the face of this complaint, a grocery store or a convenience store must be viewed as an innocent seller unless there is some suggestion that a grocery store clerk or a convenience store clerk is going to be aware of that information. And I would submit to you that there comes a point in allegations, Your Honor, where the allegation can be so nonsensical as it should not be accepted. Now, is there any law in Mississippi that says if it just is kind of ridiculous, then it obviously fails to state a claim? Or do you have to go through the equivalent of a summary judgment proceeding in order to show that it is, in fact, ridiculous? Well, let me cite you to two cases from the Ninth Circuit. And because it goes to this very point. One is the Sprewell case, which that was where there was an internal inconsistency. And Sprewell was cited in the Adams case, which we cite in our brief. And in Adams, the court said all allegations and reasonable inferences are taken as true, but conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. I would submit to you that it is an unwarranted inference to suggest that a grocery store clerk or a convenience store clerk would have any information from the medical literature about the Yale study or any of these other issues. How do we know these are just a grocery store clerk or a convenience store? I'm sorry? How do we know it's just a grocery store clerk? Well, I think on the face of the pleading, one of them is listed as a grocery store. Well, it says Fred's Dollar Store at Old Village Fair Mall in Meridian. Non-information beliefs said drugstore was owned and operated. Well, let me address the Burrell's Grocery Store. That says on its face that's in the Latiker case. That's a grocery store. It says it's a drugstore also. But there's no suggestion that that the fact that something is a drugstore does not mean a pharmacist is not guilty. Well, how do we know? I mean, this is notice pleading. You're saying you're assuming that these are just unless there's something else. Maybe there is. Is there something else that defines on your part that these are simply what you're characterizing them as? I think the pleadings cite Fred's Dollar Store, and there's no suggestion. There's a 99-cent store chain in Los Angeles, and it's a franchise. It's all over the place. It says it's a 99. It doesn't even make it to a dollar. But still, it's a big operation. And I don't know. I've not been in them. If there's a drug counter at the back, there may be a pharmacist there for all I know. So I don't know what Fred's is. Well, I can represent to the Court it does not have a pharmacist. There is nothing in the pleading. That's not – I don't think we can take that into account. I understand. But let me address the pharmacist. Let me ask you a practical question. If you're right, and if this goes back to Mississippi State Court, you're right that it's just an un – it's a silly inference, okay, and that the Mississippi courts would agree with you. It's a silly inference. Therefore, these folks are dismissed because no cause of action is stated against them. You're right back in Federal court, right? Assuming a Mississippi – I mean, the minute that piece of paper gets filed. Assuming a Mississippi State Court – Would agree with you. Well, I don't know. I guess I would – maybe the law has changed. I thought it was whenever the first piece of paper comes that – that – That's assuming we can get a State court judge. Well, yes, but isn't that the question we have to answer?  This is silly. Therefore, the resident defendants are out. Yes, Your Honor. And I guess that gets to your question of whether there's a Mississippi case on point. And I apologize for bouncing around here. The Lewis case, which we cite in our briefing, which is in the – Well, I can't find it. Let me – I've seen the footnote reference to it. Yes. Let me direct you to it. I mean, I've seen the reference to it. It is attached to both our response to the motion to remand, and it is also attached to plaintiff's supplemental brief, record site ER251. If you get any earthly idea of the stack of stuff, how in the world can I find a response to a motion to remand in a record I don't have? May I give it to the court? Please. Or just – I'll tell you what. How about giving it to the clerk after the argument? I will absolutely, Your Honor. For all of us. Thank you. That was a case in which the allegations were against the pharmacy, the pharmacist, et cetera, as well as the drug company. It was a product liability case against the drug company. And that court found specifically that a premise on each count that can reasonably be construed asserting against the pharmacy defendants is knowledge on the part of these defendants. That's what's alleged here. Yet in notwithstanding the fact that complaints in places may allege generally to knowledge possessed by the defendants, it is plain that the complaint cannot reasonably and legitimately be construed as alleging the factual basis for the conclusion that any pharmacy defendants had any knowledge or reason to know of the dangers, particularly when the major complaint has themes in which the manufacturer intentionally concealed of the true risk of the drugs. Is that a federal district judge? It is a federal district judge in the northern district of Mississippi. And I will absolutely provide that to the clerk. Not a Mississippi case, of course. Oh, you're asking about a Mississippi State court case? Sure. Well, I would suggest to you that the Williams case, when you look at the Williams case, it has set the premise for the fact that an innocent seller standing alone that can not be a claim made against them. And under Mississippi's Rule 8, there are two points under Rule 8 I want to make. Number one, it says that the claimant is entitled to relief. If you plead and only plead as to a seller under the Mississippi Supreme Court ruling of Williams, that's an innocent seller. No claim can be made without something further. Secondly, these are not alternative pleadings, these inconsistencies. They are purely inconsistent allegations. And while Rule 8 does allow for inconsistent claims to be pled, I can plead a product liability case, the drug did it. I can plead in the same complaint, the malpractice case, the doctor did it. That's not what we're dealing here with. We are dealing with inconsistent allegations, and those are not allowed under Rule 8. Could I ask just one question on a different subject? Judge Levy raised the issue of unserved defendants. Are you relying at all on that theory? I believe that if these are unserved, then they're not parties. And I think I would submit to the court that one of the concerns I think the court My question was, have you argued that? That has not been argued. Thank you. But I certainly adopt the theory. Thank you very much. I have the greatest respect for Judge Levy. I would do the same. Mr. Miller. Let me, and I won't use the whole five minutes, but let me quickly respond that, in fact, the record is devoid of any suggestion. Just so you're not disabused of the notion, you're now in minus territory. Just wrap up a little bit, will you? Very quickly, then. There is no record that Fred's Pharmacy is some little remote. It's one of the largest pharmacy chains in Mississippi, but the record is what it is. So arguing off the record, I believe, is to be improper. The Williams case does not say the seller can't be held liable. The Williams case, by my count, six different places says if the seller knew or should have known, they're liable. So I don't think the Williams case adds any benefit whatsoever. Finally, if the doctor could do it or the drug company could do it, alternatively so could the pharmaceutical seller. Thank you, Your Honor. All right. Thank you, counsel. The matter just argued will be submitted, and we'll slither into the next item.
judges: Leavy, Rymer, Fisher